UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GWENDOLYN Y. SHIELDS,

                 Plaintiff,

  -vs-                          **No. 6:16-CV-06819 (MAT)**
                                      **DECISION AND ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

---

**I. Introduction**

Represented by counsel, plaintiff Gwendolyn Y. Shields ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**II. Procedural History**

Plaintiff protectively filed an application for DIB on August 3, 2011, alleging disability as of March 5, 2011 due to cervical disc fusion and avascular necrosis of the right hip. Administrative Transcript ("T.") 86. Plaintiff's application was initially denied. T. 31-33. At Plaintiff's request, a hearing was

held before administrative law judge ("ALJ") Michael Devlin on November 18, 2014. T. 368-99. At the hearing, Plaintiff amended the application to be for a closed period of disability from March 5, 2011 to April 26, 2014. T. 371. On March 18, 2015, ALJ Devlin issued an unfavorable decision. T. 15-25. The Appeals Council denied Plaintiff's request for review on November 9, 2016, rendering the ALJ's determination the final decision of the Commissioner. T. 4-7. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2018. T. 20.

At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity for the closed period from March 5, 2011 to April 26, 2014. *Id*. At step two, the ALJ found that for the closed period from March 5, 2011 to April 26, 2014, Plaintiff suffered from the severe impairments of right hip pain, status post total right hip replacement in August 2012, and neuropathic left upper extremity symptoms, status post cervical fusion in 2012. *Id*.

At step three, the ALJ found that for the closed period from March 5, 2011 to April 26, 2014, Plaintiff did not have an

2

impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 21. Before proceeding to step four, the ALJ determined that for the closed period from March 5, 2011 to April 26, 2014, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(b) with the following additional limitations: can occasionally lift and/or carry 10 pounds; can frequently lift and/or carry less than 10 pounds; can stand and/or walk at least two hours in an eight hour workday; can sit for about six hours in an eight hour workday; can occasionally push and/or pull 10 pounds; can occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can occasionally reach, handle, and finger with the non-dominant left upper extremity; can frequently look up and down and turn head to the left and right. *Id*.

At step four, the ALJ found that for the closed period from March 5, 2011 to April 26, 2014, Plaintiff was unable to perform any past relevant work. T. 23. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed for the closed period from March 5, 2011 to April 26, 2014, including telephone solicitor and food checker. T. 24. Accordingly, the ALJ found that

Plaintiff was not disabled as defined in the Act for the closed period from March 5, 2011 to April 26, 2014. T. 24-25.

**IV. Discussion**

    **A. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff argues that (1) the ALJ failed to properly weigh the opinions of treating physician Dr. Martin B. Gingras, (2) the ALJ's RFC determination is not supported by substantial

4

evidence, and (3) the ALJ failed to properly evaluate Plaintiff's credibility. For the reasons discussed below, the Court finds these arguments without merit.

**B. The ALJ Properly Considered Dr. Gingras' Opinions**

Plaintiff's first argument is that the ALJ failed to properly apply the treating physician rule with respect to Dr. Gingras' opinions. The treating physician rule, which was in effect at the time the ALJ issued his decision in this case, provides that a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the

5

opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32). Moreover, a treating physician's opinion that a claimant is "temporarily totally disabled" is "not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner." *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003).

In this case, Plaintiff was first examined by Dr. Gingras in July 2012, in connection with a worker's compensation claim. Plaintiff, who was at that time employed as a flight attendant, reported that she had fallen down and been struck by a beverage cart during severe turbulence on June 29, 2012. Plaintiff further told Dr. Gingras that she had had only mild hip symptoms prior to this injury. Dr. Gingras determined that Plaintiff was suffering from avascular necrosis of the right femoral head and recommended hip replacement surgery. Dr. Gingras indicated at that time that he believed Plaintiff would be "probably be out of work for up to 3 months" after her surgery. T. 307.

Dr. Gingras performed Plaintiff's hip replacement surgery without complication on August 23, 2012. He examined Plaintiff on November 5, 2012, and noted that she was able to walk well with a cane and had excellent motion with minimal pain at the extreme of internal rotation. Dr. Gingras opined that Plaintiff was progressing well but stated that she was "disabled for work." T. 363.

Dr. Gingras saw Plaintiff again on December 4, 2012. At that time Plaintiff was walking well with a cane and had excellent passive flexion and rotation of her right lower extremity without groin pain. She was, however, still moderately tender to palpation over the greater trochanter. Dr. Gingras again opined that Plaintiff was "disabled for work." T. 362.

On February 1, 2012, Plaintiff treated with Dr. Gingras. Plaintiff complained of pain and Dr. Gingras noted that because Plaintiff was six-months post-operative and "x-rays of the right hip do not show any abnormalities;" he suspected "either a lower back issue or possibly a trochanteric bursitis." T. 360. Accordingly, he ordered an MRI of Plaintiff's lumbar spine.

On February 11, 2013, Dr. Gingras noted that an MRI of Plaintiff's lumbar spine had been taken and was "completely unremarkable, without any evidence of disc herniation or any other significant abnormality." T. 299. Dr. Gingras referred Plaintiff to physical therapy and instructed her to take Aleve tablets twice per day. He again opined that she was "disabled for work." T. 299.

7

Dr. Gingras saw Plaintiff again on April 16, 2013. Plaintiff had been attending physical therapy and had noticed "definite improvement in her hip symptoms." T. 297. She no longer required a cane to walk and had "excellent range of motion of her right hip without pain." *Id*. She did continue to have moderate tenderness to palpation over a localized are of the greater trochanter. Dr. Gingras gave Plaintiff an injection of Depo-Medrol and xylocaine and instructed her to continue with physical therapy. Under "work status," he stated that Plaintiff would "continue to refrain from work." *Id*.

Plaintiff treated with Dr. Gingras on May 13, 2013. Plaintiff was still tender to palpation over the greater trochanter, but less so than she had been previously. She was able to walk well with "hardly any noticeable limp" and had "no pain whatsoever with flexion and internal rotation of her right hip." T. 295. Dr. Gingras gave Plaintiff another injection and switched her from Aleve to Voltaren. Under "work status," he again stated that Plaintiff would "continue to refrain from work." *Id*.

On May 31, 2013, Dr. Gingras administered another injection to Plaintiff's hip. He noted that Plaintiff's gait was much improved. He opined that Plaintiff was "unable to return to her usual employment." T. 294. Dr. Gingras administered another injection on June 28, 2013, and opined that it would be appropriate for Plaintiff to receive one or two more. He also noted that he had requested authorization for additional physical therapy. Dr. Gingras noted that Plaintiff was "out of work." T. 358.

On July 26, 2013, Dr. Gingras discontinued Plaintiff's Voltaren prescription and started her on indomethacin. He also gave Plaintiff a list of exercises she could do to help with her reported back pain. Dr. Gingras opined that Plaintiff was "disabled for work." T. 356. He repeated that assessment on October 3, 2013. T. 354. That same day, he also requested authorization for additional physical therapy.

On November 7, 2013, Plaintiff saw Dr. Gingras again. She had no pain with passive motion of the right hip but did have localized pain over right sacroiliac joint area. Dr. Gingras continued Plaintiff's indomethacin and also gave her a prescription for flexeril. He opined that Plaintiff was "presently disabled for work." T. 352.

On December 6, 2013, Dr. Gingras saw Plaintiff for continued complaints of pain. He noted that x-rays of Plaintiff's right hip showed that the components looked "quite good" with no loosening. T. 351. He again opined that Plaintiff was "disabled from work." *Id*. Dr. Gingras repeated his assessment that Plaintiff was "disabled from work" on February 17, 2014.

In his opinion, the ALJ gave "little weight" to Dr. Gingras' various statements that Plaintiff was disabled from working. The ALJ noted that these statements were "conclusory" and failed to provide a "function-by-function analysis of [Plaintiff'] abilities." T. 23. The ALJ further noted that Dr. Gingras' statements were rendered in the context of a workers' compensation claim, which applies "a different standard of disability." *Id*.

9

The Court finds no error in the ALJ's consideration of Dr. Gingras' opinions. As noted above, a treating physician's opinion that an individual is disabled is not entitled to controlling weight, because the ultimate issue of disability is reserved for the Commissioner. Moreover, "the ALJ correctly noted that the determination of disability in the context of a workers' compensation claim uses a different standard than the Social Security Act." *Ackley v. Colvin*, No. 13-CV-6656T, 2015 WL 1915133, at *5 (W.D.N.Y. Apr. 27, 2015) (holding that ALJ properly declined to afford controlling weight to treating physicians' opinion that claimant was totally disabled because it was conclusory, failed to specify functional limitations, and was rendered in the workers' compensation context); *see also Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) ("The standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."). The ALJ also properly declined to afford Dr. Gingras' statements controlling weight because they were conclusory. *See Daniels v. Berryhill*, 270 F. Supp. 3d 764, 777 (S.D.N.Y. 2017) (ALJ properly afforded minimal weight to treating physician's repeated statements that claimant suffered from a temporary total disability because treating physician "never noted any specific limitations" and "conclusory statements as to disability may be rejected by an ALJ, who is the ultimate decision maker as to whether a claimant is disabled"); *see*

*also Sink v. Colvin,* No. 1:12-CV-00239 JJM, 2015 WL 3604655, at *17 (W.D.N.Y. June 8, 2015) ("a conclusory statement concerning disability, made by a treating physician, does not constitute a 'medical opinion' in any event"). The Court accordingly finds no violation of the treating physician rule.

**C.  The RFC Finding is Supported by Substantial Evidence**

Plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence and, relatedly, that even if the ALJ was not obligated to give controlling weight to Dr. Gingras' opinions, he was required to recontact Dr. Gingras and seek additional information. These arguments lack merit.

An ALJ has no duty to re-contact a treating physician "to obtain a function-by-function analysis of [p]laintiff's impairments" where consultative physicians assess a plaintiff's functional limitations and provide an opinion on them. *Grogg v. Commissioner of Social Security*, No. 5:11-CV-1381 (NAM/TWD), 2014 WL 1312325 *7-8 (N.D.N.Y.2014). Additionally, even where a treating physician does not provide a specific function-by-function assessment, where the record is "extensive enough to support an informed residual functional capacity finding by the ALJ, remand is not appropriate". *Leonard v. Colvin*, No. 12-CV-526A(F), 2014 WL 1338813, *11 (W.D.N.Y.2014).

In this case, consultative examiner Dr. Karl Eurenius performed a thorough examination of Plaintiff on January 22, 2013, after her hip replacement. T. 283-286. Plaintiff was in no acute distress, was able to walk on her heels and toes without

difficulty, and needed no help rising from a chair or getting on and off the exam table. T. 284. Plaintiff's lumbar spine had full flexion, extension, and rotation bilaterally, while her cervical spine had full flexion and extension with rotation limited to 45 degrees to the right. T. 285. Her upper extremities and left hip, knees, and ankles had a full passive range of motion, while her right hip had flexion to approximately 100 degrees. *Id.* Internal and external rotation of the right hip were "slightly limited" as compared to the left hip. *Id*. Plaintiff's joints were stable and nontender without redness, heat, swelling, or effusion, and her deep tendon reflexes were physiologic and equal in all extremities. *Id*. No sensory deficits were noted and strength was 5/5 in all extremities. *Id*. Dr. Eurenius opined that Plaintiff was mildly limited in bending, lifting, carrying, pushing, and pulling due to her right hip pain and moderately limited in lifting, carrying, pushing, and pulling due to neck and left arm pain. T. 286.

Dr. Eurenius' thorough examination of Plaintiff and assessment of her functional limitations obviated any need to recontact Dr. Gingras. Contrary to Plaintiff's argument, Dr. Eurenius' use of the phrases "mildly" and "moderately" did not render his opinion impermissible vague. *See Dutcher v. Colvin*, No. 1:12-CV-1662 GLS, 2014 WL 295776, at *5 (N.D.N.Y. Jan. 27, 2014) ("mere use of phrases such as 'moderate' or 'mild' does not render a doctor's opinion vague or non-substantial for purposes of an ALJ's RFC determination"). Dr. Eurenius's conclusions were "clear and

detailed, and, moreover, supported by his examination results and the record as a whole." *Id*. As such, the ALJ properly relied on Dr. Eurenius' opinion in formulating an RFC finding.

Additionally, the ALJ had before him all of Dr. Gingras' treatment notes, which further supported his conclusions. Dr. Gingras observed that Plaintiff's hip replacement surgery had been uneventful and that she continually improved, such that she had only a very mild limp. By December 2013, Dr. Gingras noted that Plaintiff's right hip examination was unremarkable. T. 351. Similarly, an MRI of Plaintiff's lumbar spine was wholly unremarkable. T. 299. This medical evidence further supports the conclusion that Plaintiff was capable of a modified range of sedentary work.

The ALJ's RFC finding is also supported by the opinion of state agency medical consultant Dr. N. Pinilla. Dr. Pinilla reviewed Plaintiff's medical history and opined that she was capable of light work. T. 287. It is well-established that under the Commissioner's regulations, "the opinions of nonexamining sources [may] override treating sources' opinions, provided they are supported by evidence in the record." *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Here, Dr. Pinilla's opinion is supported by Dr. Eurenius' physical examination and by Dr. Gingras' observations of Plaintiff after her hip replacement surgery.

In sum, the Court finds that the ALJ's RFC finding was supported by and consistent with the medical evidence of record. While there is arguably evidence that would have supported a more

13

restrictive RFC finding, the Second Circuit has explained that, when reviewing a decision of the Commissioner denying a claim for benefits, "whether there is substantial evidence supporting the [claimant's] view is not the question ...; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). Here, for the reasons set forth above, the Court concludes that substantial evidence supports the ALJ's RFC finding.

### D. The ALJ Appropriately Assessed Plaintiff's Credibility

Plaintiff's final argument is that the ALJ erred in his assessment of her credibility. The Court has reviewed the ALJ's credibility assessment and, for the reasons discussed below, finds no reversible error.

In assessing a claimant's credibility, an ALJ is instructed to consider whether her subjective claims of pain are "consistent with the medical and other objective evidence." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015). "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (internal quotation omitted). An ALJ is entitled to great deference when making credibility findings and can only be reversed if those findings are patently unreasonable. *Andrisani v.*

*Colvin*, No. 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 13-CV-6308(MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). In this case, the ALJ concluded that Plaintiff was less than fully credible, because (1) her testimony was inconsistent with the medical evidence of record and (2) her treatment was generally conservative, including the use of over-the-counter pain medication.

The ALJ appropriately considered the consistency of Plaintiff's testimony with the medical evidence of record. In particular, and as the ALJ expressly noted, Plaintiff's claim that her hip and neck pain were a "10/10" during the closed period was unsupported by Plaintiff's contemporaneous statements to her physicians. For example, in April 2012, Plaintiff's orthopedist, Dr. Peter Capicotto, observed that Plaintiff had only "occasional mild pain," that she "overall . . . [did] not complain of any neck or radicular symptoms," and that she "takes Aleve occasionally for pain." T. 147. Moreover, after her work injury and subsequent hip replacement surgery, Plaintiff had a largely uneventful recovery. By November 2012, Plaintiff reported being in only "some pain" and stated that she was "significantly better than she was preoperatively." T. 363. On December 4, 2012, Plaintiff reported

to Dr. Gingras that she was in only "moderate discomfort." T. 362. When she was examined by Dr. Eurenius in January 2013, Plaintiff was in no acute distress and stated that she had "some pain" that would "occasionally" radiate, but that she was "much better in her right hip than she was prior to surgery." T. 283-84. An ALJ is "entitled to consider plaintiff's own inconsistent statements . . . as undermining [her] overall credibility." *Rivera v. Colvin*, No. 1:14-CV-00816 MAT, 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015). It was appropriate for the ALJ to note that Plaintiff's testimony regarding her pain during the closed period at issue was not born out by her contemporaneous medical records.

The ALJ also did not err by taking into account the fact that Plaintiff received conservative treatment. *See, Rivera,* 2015 WL 6142860, at *6 ("[T]he ALJ was entitled to consider evidence that [the claimant] pursued a conservative treatment as one factor in determining credibility[.]")(citation omitted); *Amoroso v. Colvin*, No. 13-CV-5115 SJF, 2015 WL 5794226, at *10 (E.D.N.Y. Sept. 30, 2015) (ALJ "properly considered [claimant's] daily activities ... and her 'conservative' treatment ... which both suggest that she is capable of performing sedentary work"). In this case, while Plaintiff was sometimes prescribed prescription pain medications, the ALJ correctly observed that, during the closed period at issue, she was often able to control her pain with only over-the-counter medications, including Aleve. It was not improper for the ALJ to take this fact into account in assessing Plaintiff's credibility.

Plaintiff contends that the ALJ should have found her credible both because she underwent surgery and because she has a favorable work history. However, a favorable work history "is 'just one of many factors' appropriately considered in assessing credibility." *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). Moreover, and as the ALJ explained in detail in his decision, the medical evidence of record shows that Plaintiff's surgeries were successful and largely alleviated her pain. The mere fact that Plaintiff followed her physicians' recommendations for surgery does not compel the ALJ to make a favorable credibility finding.

For the foregoing reasons, the Court does not find that the ALJ committed reversible error in assessing Plaintiff's credibility. Accordingly, the Court finds that the Commissioner's final determination must he upheld and that remand of this matter is not warranted.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 7) is denied. The Commissioner's motion for judgment on the pleadings (Docket No. 9) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED**.

                                                **S/Michael A. Telesca**

                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:    May 23, 2018
           Rochester, New York.